USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/27/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Joseph Ramos,

                Plaintiff,

-against-

Andrew M. Saul, Commissioner of Social Security,

                Defendant.

18 Civ. 7465 (AT) (KNF)

**ORDER**

ANALISA TORRES, District Judge:

    Plaintiff, Joseph Ramos, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") that Plaintiff was not disabled and, therefore, not eligible for Supplemental Security Income benefits ("SSI").[1] The parties cross-moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). ECF Nos. 9, 13. On September 3, 2019, the Honorable Kevin Nathaniel Fox, issued a Report and Recommendation ("R&R") which recommends that (1) the Court grant Plaintiff's motion, reversing the Commissioner's decision and remanding the case to the Social Security Administration ("SSA"); and (2) deny the Commissioner's motion. R&R at 11–12, ECF No. 17. The Commissioner filed objections to the R&R. Comm'r Obj., ECF No. 18. Plaintiff responded to the Commissioner's objections. Pl. Resp., ECF No. 19. On due consideration, the Commissioner's objections are OVERRULED and Judge Fox's thorough and well-reasoned R&R is ADOPTED.

---

[1] Andrew M. Saul, having been appointed Commissioner of the Social Security Administration, is substituted for Acting Commissioner Nancy A. Berryhill, pursuant to Federal Rule of Civil Procedure 25(d).

**BACKGROUND**[2]

Plaintiff filed an application for SSI on May 28, 2014, alleging disability as of February 1, 2014. Administrative Record ("Record") at 19, ECF No. 8. An administrative hearing was held on September 1, 2016, before Paul Armstrong, an administrative law judge ("ALJ"). *Id.* Maria Vargas, an impartial vocational expert, also appeared at the hearing. *Id.* The issue before the ALJ was whether Plaintiff is disabled. *Id.* The ALJ found that Plaintiff: (1) has not engaged in substantial gainful activity since May 28, 2014, the application date; (2) has the following severe impairments: degenerative disc disease, foot degenerative joint disease, chronic obstructive pulmonary disease ("COPD"), obesity, heart failure, diabetes and neuropathy; (3) does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b) where the claimant lifts or carries 20 pounds occasionally and ten pounds frequently, stands or walks for six of eight hours during the workday, and sits for six of eight hours during the workday, and can have no concentrated exposure to noxious fumes, odors or respiratory irritants; (5) is capable of performing past relevant work as a security guard; which does not require the performance of work related activities precluded by his RFC; and (6) has not been under a disability as defined in the Social Security Act since the application date. *Id.* at 21–28; *see also* R&R at 1–2.

The ALJ came to these conclusions after considering, *inter alia*, Plaintiff's symptoms, the opinion of Plaintiff's treating podiatrist, Frank Ayaso, D.P.M.,[3] the opinion of SSA consultative

---

[2] The Court presumes familiarity with the facts as detailed in the R & R, see R & R 1–6, and does not summarize them in full here.
[3] The ALJ does not mention Dr. Ayaso in his decision but instead refers to a "Dr. Finkelstein," when discussing treatment records from Dr. Ayaso. *See* R at 31. The Commissioner contends that "[t]his is harmless error; while Dr.

2

examiner Marilee Mescon, M.D, and the opinion of vocational expert, Maria Vargas. Record at 24–28.

The ALJ's decision became the Commissioner's final decision on November 28, 2017 when the SSA Appeals Council denied Plaintiff's request for review. Record at 6. Plaintiff sought judicial review in this Court on August 16, 2018. ECF No. 1.

**DISCUSSION**

I. Standard of Review

In reviewing final decisions of the SSA, courts "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (quoting *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). When a party makes specific objections, the court reviews *de novo* those portions of the report and recommendation that have been properly objected to. *Id.*; Fed. R. Civ. P. 72(b)(3). However, "when a party makes only conclusory or general objections, or simply reiterates his original arguments," the

---

Ayaso treated plaintiff primarily for problems with his feet, Dr. Finkelstein and Dr. Ayaso appear to have practiced in the same office . . . and Dr. Finkelstein was named in medical releases and in a [questionnaire] signed by Dr. Ayaso." R&R at 2.

court reviews the report and recommendation strictly for clear error. *Wallace v. Superintendent of Clinton Corr. Facility*, No. 13 Civ. 3989, 2014 WL 2854631, at *1 (S.D.N.Y. June 20, 2014).

## II. The Commissioner's Objections

The R&R recommends that the Court: (1) grant Plaintiff's motion for judgment on the pleadings by reversing the decision of the Commissioner and remand the cause for a rehearing; and (2) deny the Commissioner's cross-motion for judgment on the pleadings. R&R at 11–12. The Commissioner argues that Judge Fox erred in concluding that (1) the ALJ violated the treating physician rule by not giving the opinions of Plaintiff's treating physician, Dr. Ayaso, controlling weight or providing sufficient reasons for determining that Dr. Ayaso's opinion was entitled to less weight than that of the consultative examiner; (2) finding that the ALJ erred by discounting Dr. Ayaso's opinions based on his recommendation for conservative treatment; and (3) concluding that the ALJ's finding on Plaintiff's RFC was "wholly without an articulated foundation." Comm'r Obj. 1–2; *see also* R&R 9–11.

### A. The Treating Physician Rule

A treating physician's opinion is given controlling weight if the opinion on the nature and severity of an impairment is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). "The opinion of a treating physician is accorded extra weight because the continuity of treatment he provides and the doctor/patient relationship he develops place him in a unique position to make a complete and accurate diagnosis of his patient." *Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) (quoting *Monguer v. Heckler*, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983)). "Nevertheless, '[a] treating physician's statement that

4

the claimant is disabled cannot itself be determinative.'" *Micheli v. Astrue*, 501 F. App'x 26, 28 (2d Cir. 2012) (alteration in original) (quoting *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)).

"An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)). "Among those factors are: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the [SSA]'s attention that tend to support or contradict the opinion." *Id.* (citing 20 C.F.R. § 404.1527).

The ALJ must set forth the reasons for the weight assigned to the treating physician's opinion. *See id.* The Second Circuit has said that courts should not "hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion." *Id.* at 33.

1. Denial of Controlling Weight to Treating Physician's Assessment

The ALJ determined that Ramos had the capacity to perform light work with limitations. R&R at 10. Judge Fox concluded that the ALJ's determination violated the treating physician rule by failing to give the opinion of Dr. Ayaso, Plaintiff's treating physician, controlling weight, or setting forth the reasons for concluding that Dr. Ayaso's opinion was entitled to less weight than that of one-time consultant, Dr. Mescon. *Id.* Judge Fox considered this failure to be significant because there was no indication that Dr. Mescon was provided with Plaintiff's medical records or considered all the impairments at issue. *Id.*

5

The Commissioner argues that Judge Fox's conclusion is contrary to law because a consultative examiner does not need to be provided with Plaintiff's medical records and is also erroneous because the record indicates that Dr. Mescon considered Plaintiff's diabetic condition. Comm'r Obj. at 1. Plaintiff contends that Dr. Mescon's opinion is silent on the impact of Plaintiff's foot conditions, which were addressed by Dr. Ayaso, and so the ALJ had no medical basis to rely more heavily on the opinions of the consultative examiner than those of Dr. Ayaso with respect to Plaintiff's foot conditions. Pl. Resp. at 4.

The Court agrees with Judge Fox that the ALJ violated the treating physician rule by failing to (1) give the treating physician's opinion controlling weight, or (2) set forth his reasons for concluding that Dr. Ayaso's opinion was entitled to less weight than that of one-time consultant Dr. Mescon. *See* R&R at 10; *see also Halloran*, 362 F.3d at 32. Dr. Ayaso found that Plaintiff is limited to sedentary work. Record at 25. The ALJ granted this opinion "little weight" because he found the opinion to be contradicted by Plaintiff's normal functioning during his consultative examination. *Id.* In other words, the ALJ relied on the opinion of the consultative examiner, who examined Plaintiff once, instead of relying on the opinion of Dr. Ayaso, who has provided Plaintiff with continuous treatment, placing him in "a unique position to make a complete and accurate diagnosis of his patient." *Petrie*, 412 F. App'x at 405 (internal quotation marks and citation omitted). The Second Circuit has "frequently cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination." *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019) (internal quotation marks and citation omitted). This is especially true in a case such as this one, where the ALJ concedes that the consultative physician had "overlooked [Plaintiff's] symptoms from his diabetes and neuropathy." R&R at 10; *see also* Record at 26.

Although it is true that the Second Circuit does not require "slavish recitation of each and every factor," an ALJ's "reasoning and adherence to the regulation" still must be clear from his opinion. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013); *see also Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) (finding that an ALJ's treating physician analysis was flawed when the ALJ "failed to consider all of the factors cited in the regulations"); *Rolon v. Comm'r of Soc. Sec.*, 994 F. Supp. 2d 496, 506 (S.D.N.Y. 2014) ("Failure to properly apply the treating physician's rule, or consider the required factors, constitutes legal error and is a sufficient basis for remand."); *Lazo-Espinoza v. Astrue*, No. 10 Civ. 2089, 2012 WL 1031417, at *12 (E.D.N.Y. Mar. 27, 2012) ("Here, despite the ALJ's brief consideration of some of the applicable . . . factors, he did not fulfill his duty to consider all of the factors before according little weight to the [t]reating [p]hysicians' opinions." (internal quotation marks and citation omitted)).

The ALJ, in the one paragraph discussing Dr. Ayaso's opinion, failed to evaluate his opinion consistent with the requirements of 20 C.F.R. § 404.1527. The ALJ's decision fails to consider the length, nature, and extent of treatment relationship between Dr. Ayaso and the patient. It also fails to discuss Dr. Ayaso's specialization. The ALJ, therefore, "did not explicitly consider whether the [treating] physician is a specialist [i]n order to override" his opinion. *Rolon*, 994 F. Supp. 2d at 508 (quoting *Selian*, 708 F.3d at 419) (alterations in original). The ALJ briefly considered the factors and determined, in conclusory fashion, that Dr. Ayaso's opinion did not deserve controlling weight. The Court, therefore, agrees with Judge Fox that the ALJ committed legal error by failing to "properly apply the treating physician's rule, or consider the required factors." *Rolon*, 994 F. Supp. 2d at 506.

Accordingly, the Commissioner's objection to Judge Fox's ruling that the ALJ erred by not giving controlling weight to the opinion of Plaintiff's treating physician is OVERRULED.

2. Discounting Dr. Ayaso's Opinion Based on Conservative Treatment

The ALJ found that Dr. Ayaso's opinions were "contradicted by the conservative treatment in the record, as [Plaintiff's] main treatment for neuropathy was pads for his feet." Record at 26. Judge Fox found that the ALJ erred in discounting Dr. Ayaso's opinions based on the view that Plaintiff's treatment was conservative. R&R at 10. The Commissioner argues that this finding was erroneous because an ALJ is permitted to consider Plaintiff's conservative treatment in weighing the evidence and assessing Plaintiff's RFC. Comm'r Obj. at 6. The Commissioner relies on the Second Circuit's decision in *Tricarico v. Colvin*, 681 F. App'x 98, 100 (2d Cir. 2017), which held that an ALJ properly observed that the extreme limitations identified by the treating physician were not consistent with the relatively conservative treatment plan prescribed. Comm'r Obj. at 6. Conservative treatment, however, may not always be an accurate indication of the severity of a patient's condition. *See* Pl. Resp. at 1. And in this case, Dr. Ayaso' recommendation for conservative treatment is not a proper basis for discounting his opinion.

A treating physician's opinion is not to be discounted "merely because he has recommended a conservative treatment regimen." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008); *see also* R&R at 10–11. ALJs may not "impose[ ] their . . . notion[s] that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered. . . . [A] circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion." *Burgess*, 537 F.3d at 129 (internal quotation marks and citation omitted). As Judge Fox noted, "surgery was contraindicated because [Plaintiff] has diffuse nerve damage due to diabetes, a condition calling

8

for conservative treatment." R&R at 10. The ALJ failed to mention this fact when making his RFC finding. *See generally* Record at 19–28.

In *Tricarico*, the limitations identified by the treating physician were inconsistent with a relatively conservative treatment plan. 681 F. App'x 100. The opposite is true here. Having diffuse nerve damage due to diabetes is "a condition calling for conservative treatment." *See* R&R at 10. Here, an ALJ, who unlike Dr. Ayaso, is not a physician or specialist, and who does not have the experience or relationship with Plaintiff that Dr. Ayaso has, imposed his notion that the "severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered." *Burgess*, 537 F.3d at 129. In doing so, the ALJ failed to discuss the fact that less conservative treatment, namely surgery, was contraindicated. The ALJ, therefore, failed to set forth an "overwhelmingly compelling" justification for "overcom[ing] [the] medical opinion" of Plaintiff's treating physician. *Burgess*, 537 F.3d at 129.

Accordingly, the Commissioner's objection with respect to the ALJ's decision to discount the opinion of Plaintiff's treating physician because he recommended conservative treatment is OVERRULED.

B. Residual Functional Capacity Finding

An individual's residual functional capacity reflects the most an individual can do in terms of physical and mental work, on a sustained basis, despite limitations from his impairments. 20 C.F.R. § 404.1545. The ALJ determined that Plaintiff "has the residual functional capacity to perform light work as defined in 20 C.F.R. 416.967(b) where the claimant lifts or carries 20 pounds occasionally and 10 pounds frequently, stands or walks for six of eight hours during the workday, and sits for six of eight hours during the workday." Record at 24. Judge Fox concluded that the ALJ failed to indicate what evidence supported a finding that

9

Plaintiff, who previously worked as a security guard, was capable of light exertional work, requiring Plaintiff to stand most of the workday on a sustained basis, considering his chronic pain and neuropathy in his lower extremities. R&R at 11.

The Commissioner argues that Judge Fox erred because the ALJ's RFC finding was supported by substantial evidence. Comm'r Obj. at 6–7. According to the Commissioner, the ALJ properly relied on the opinion of Dr. Mescon, and on other evidence in the record, to arrive at his "well reasoned RFC finding." *Id.* at 7. Plaintiff contends that there is no evidence in the record to support such a finding, including the opinion of Dr. Mescon, who found that Plaintiff had no physical limitations; a conclusion the ALJ must not have found credible considering that he restricted Plaintiff to light work, notwithstanding Dr. Mescon's finding. *Id.* at 5–6.

According to the Commissioner's ruling on determining a claimant's RFC, an ALJ's RFC ruling must

> include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996). The ALJ, after noting that Plaintiff's physical impairments "could reasonably be expected to cause [Plaintiff's] alleged symptoms," concluded that the Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Record at 25. The ALJ, however, fails to cite "specific medical facts" that support his conclusion, as required by the

Commissioner's ruling on determining a claimant's RFC.  *See* SSR 96-8P.  Although the ALJ did consider Plaintiff's ability to perform certain activities such as bathing, watching television, and sitting at a nearby park, Record at 26, the ALJ failed to demonstrate that Plaintiff is able to "perform such activities on a consistent ongoing basis to a degree that can be compared to light work."  Pl. Resp. at 6.

The ALJ's failure to cite any specific medical evidence or even any persuasive non-medical evidence that establishes the RFC he assigned to Plaintiff warrants remand.  R&R at 11; *see e.g.*, *Rivera v. Comm'r of Soc. Sec.*, No. 15 Civ. 8439, 2017 WL 120974, at *12–13 (S.D.N.Y. Jan. 12, 2017) (finding ALJ erred by making an RFC finding not supported by any medical opinion and not further developing the record on the claimant's level of functioning), *report and recommendation adopted*, No. 15 Civ. 8439, 2017 WL 946296 (S.D.N.Y. Mar. 9, 2017); *Legall v. Colvin*, No. 13 Civ. 1426, 2014 WL 4494753, at *4 (S.D.N.Y. Sept. 10, 2014) ("[B]ecause an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his or her own opinion for that of a physician, and has committed legal error." (internal quotation marks, alteration, and citation omitted)).  The ALJ committed legal error in arriving at his RFC determination without citing to any medical evidence.  *See Legall*, 2014 WL 4494753, at *4.

Accordingly, the Commissioner's objection to Judge Fox's holding that the ALJ's RFC finding was without articulated foundation is OVERRULED.

## CONCLUSION

For the reasons set forth above, the R&R is ADOPTED in its entirety, Plaintiff's motion for judgment on the pleadings is GRANTED to the extent it seeks remand for a new hearing, and Defendant's motion is DENIED. The case is remanded to the SSA for further development of the administrative record. The Clerk of Court is directed to terminate the motions at ECF Nos. 9 and 13 and close the case.

SO ORDERED.

Dated: January 27, 2020
       New York, New York

_____
ANALISA TORRES
United States District Judge